Wahlmann v. C. Becker Milling Co., 188 Ill. App. 380.

## Henry C. Wahlmann, Administrator, Plaintiff in Error, v. C. Becker Milling Company, Defendant in Error.

1. MASTER AND SERVANT, § 98*—persons entitled to protection of statute requiring machinery to be guarded. An employee who is the head miller in a mill and in charge of the machinery, held not deprived of the protection of section 89, ch. 48, Hurd's R. S., J. & A. ¶ 5386, requiring machinery to be guarded, for the reason he is a superintendent of the mill, where his care and management of the machinery was subject to the decision of the operators of the mill and besides looking after the machinery it was a part of his duties to work in the mill as a miller.

2. MASTER AND SERVANT, § 98*—persons charged with statutory duty of guarding machinery. Section 93, ch. 48, Hurd's R. S., J. & A. ¶ 5390, was intended to require the owner, lessee or person in charge of a mill to reme⁀ ‥ ‵ts by placing guards where needed, and it was not intende⁀ ⁀ ⁀e burden should be cast upon an employee, though a ma⁀ ⁀ ⁀o look after the improvements in the machinery, where ⁀ ⁀r and operator of the plant was present and in charge ⁀ ⁀eration of the mill.

3. MASTER AND SERVAN⁀ ⁀—penalty imposed for violation of statute requiring machin⁀ ⁀e guarded. The penalty imposed on an employer who fail⁀ ⁀ply with the statute relating to guarding of machinery i⁀ ⁀ away from him the defenses of contributory negligence a⁀ ⁀ed risk.

4. MASTER AND SERVAN⁀. ⁀*—when direction of verdict improper. In an action to ⁀⁀ ⁀or the death of an employee in a mill alleged to have beer⁀ ⁀d by failure of the employer to place guards about a belt⁀ ⁀ulley as required by section 89, ch. 48, Hurd's R. S., J. & ⁀, ⁀386, a direction of a verdict for defendant on the ground t⁀ ⁀ased was such a superintendent of the mill as would deprive ⁀⁀ ⁀f the benefits of the statute, held error where there was evi⁀ ⁀ that he was an employee whose business it was to not only lo⁀ ⁀fter the machinery but to perform work which required him to ⁀ ⁀ near the belt and pulley.

Error to the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding.   Heard in this court at the March term, 1914.  Reversed and remanded.  Opinion filed July 28, 1914.

A. D. RIESS and A. E. CRISLER, for plaintiff in error.

A. C. BOLLINGER, J. M. LASHLEY and H. CLAY HORNER, for defendant in error.

MR. JUSTICE McBRIDE delivered the opinion of the court.

At the close of the trial in the court below the presiding judge directed a verdict for the defendant, and the plaintiff prosecutes this writ of error seeking a reversal of the order made by the lower court.  A description of the machinery is not very fully set forth in the evidence as abstracted, but enough appears to show that there were two rolls, one known as the "Nordyke roll" and the other "Allis roll."   Attached to these rolls were pulleys, one larger than the other, over which pulley belts passed and the whole machinery was operated by steam power.   The belts upon these pulleys at times slipped, and upon such occasions it became necessary to apply upon the belt a dope to prevent it from slipping, which was done by spreading this dope on the belt near the pulleys and while the machine was in operation.   These pulleys were not guarded and when the deceased, Victor Hahn, was attempting to apply some of this dope to the belt so as to prevent it from slipping, he in some manner was caught between the belt and the pulley and killed.  The evidence tends to show that these pulleys should have been guarded by crossbars so as to at least create a less liability of being injured.   No one saw the deceased at the time he was caught by the pulleys, and the exact manner in which it was done is not explained, but the evidence tends to show that he was a prudent, careful man about his work.   It further appears that

he was the head miller and had charge of the milling machinery, but the stock of the defendant in error was owned entirely by Conrad and Herman Becker. Conrad was president and Herman, his son, was secretary and treasurer. The business of the defendant in error was transacted by Conrad and Herman Becker, who were present while the mill was in operation and looking after its business. It is said by some of the witnesses that Conrad Becker was manager of the mill and that Hahn was head miller and that: "We took orders from him in regard to the running or repairing of the machinery and Mr. Hahn took his orders from Mr. Becker. He worked for Mr. Becker but I don't know anything about his taking orders from Mr. Becker as to how the machinery should be managed."

The declaration, omitting the formal parts, alleges that the said machines were so located as to expose any employee of the defendant passing or working with the said machines and the said belts and pulleys to the danger of being caught and dragged in and injured by said belts and pulleys, and which said belts and pulleys could practically have been inclosed, fenced or otherwise guarded against such danger, and that it became the duty of the defendant under the statute to properly inclose, fence or otherwise guard the said shafts, pulleys and belts of said machines to protect its employees working with or about said machines from danger of being caught and injured thereby; that the defendant in utter disregard of its duty in this behalf wilfully, carelessly and negligently failed to inclose, fence or otherwise guard such shafting, pulleys or belts in any manner whatever, and that while the said Victor Hahn was in the discharge of his duty as miller was caught by his right arm by one of the said belts and pulleys and injured, from which injury he shortly thereafter died.

It is claimed that the court erred in directing a verdict for the defendant: First, because there was evi-

dence tending to show that the deceased was an employee of defendant and as such was entitled to the benefit of the statute requiring appellant to guard its machinery and protect its employees; and secondly, that there was evidence tending to show that it was practical to have guarded the machinery in question.

It is contended by counsel for defendant that as deceased was head miller and superintendent of the machinery that it became his duty to place guards about this machinery, and having failed so to do he or his representative could not invoke the benefit of the statute, and this is the principal question to be determined, as the evidence fairly tends to show, and it is not disputed, that it was practical to place guards about this machinery.

In 1909, the Legislature passed an Act to provide for the health, safety and comfort of employees in factories, mercantile establishments, mills and workshops in this State, which became effective on January 1, 1910, the first section of which act provided, among other things: "All dangerous places in or about mercantile establishments, factories, mills or workshops, near to which any employe is obliged to pass, or to be employed shall, where practicable, be properly inclosed, fenced or otherwise guarded. No machine in any factory, mercantile establishment, mill or workshop, shall be used when the same is known to be dangerously defective, and no repairs shall be made to the active mechanism or operative part of any machine when the machine is in motion." Hurd's R. S., ch. 48, sec. 89, (J. & A. ¶ 5386.)

It appears from the evidence that the machinery was installed in this mill in the year 1905 by a Mr. Dorsey who placed the machinery in this mill under the direction of Mr. Becker, and he says: "I superintended the placing of the machinery there. Victor Hahn did not do it. Mr. Becker was the man I dealt with in a business way. He was the man who had to pass on every-

thing as to the installation of the machinery. He was around there almost every day, both he and his son. I consulted with him about this machinery only in a business way. I employed my men myself. All the superintending that was done there while I was there I did myself. I said that Victor Hahn was superintendent while I was there because Mr. Becker introduced him to me as superintendent and head miller and after the mill started he was the man who instructed the mill hands.'' The evidence of the other witnessess is to the effect that the Beckers managed and controlled the business and were the executive representatives of this corporation, and while the evidence tends to show that the deceased Victor Hahn was head miller and in charge of the machinery, his care for the machinery and management of it was, as we understand this evidence, at all times subject to the decision and determination of the Beckers. In other words, Hahn was at work for the Beckers at a salary of one hundred and twenty-five dollars per month; his business was to look after the machinery and if anything became out of repair would repair it, but there is nothing in this record to show that he was authorized to install any machinery except as he might obtain authority from the Beckers. His business was confined not only to the looking after the machinery but he worked in the mill as miller, and in fact at the time that he was killed he was engaged at work. It is provided by statute: ''If any elevator, machine, electrical apparatus or system of wiring, or any part or parts thereof, in any factory, mercantile establishment, mill or workshop, are in an unsafe condition, or are not properly guarded, where reasonable to guard the same, the owner or lessee, or his agent, superintendent or other person in charge thereof, shall, upon notice from the Chief State Factory Inspector, or the Assistant Chief State Factory Inspector, remedy such unsafe condition within a reasonable time after receiving

such notice." Section 93, ch. 48, Hurd's R. S. (J. & A. ¶ 5390.) The evident intention of this statute is to require the owner, lessee or person in charge of the mill to remedy the defect by placing guards where needed. It certainly was not intended that this burden should be cast upon one, though a machinist, to look after the improvements in the machinery when the owner and operator of the plant was present and in operation of the mill. Especially so in view of the language of the Supreme Court in the case of *Streeter v. Western Wheeled Scraper Co.*, 254 Ill. 257, which says: "It imposes upon the master an absolute, specific duty,— one which he cannot delegate and against his neglect of which he ought not to be allowed to contract. If the employee must assume the risk of the employer's violation of the statute the act is a delusion so far as the protection of the former is concerned." In the same case the Court further says, in speaking of the effect of this statute that: "The effect of it is to create a new situation in the relation of master and servant, and to present the new question whether the doctrine of assumption of risk heretofore applied to that relation should apply in the same way to the new conditions. The duty of the master has been changed. He may no longer conduct his business in his own way. He may no longer use such machinery and appliances as he chooses. The measure of his duty is no longer reasonable care to furnish a safe place and safe machinery and tools, but in addition to such reasonable care he must use in his business the means and methods required by the statute. The law does not leave to his judgment the reasonableness of enclosing or protecting dangerous machinery, or permit him to expose to increased and unlawful dangers such of his employees as may be driven by force of circumstances to continue in his employ rather than leave it and take chances on securing employment elsewhere under lawful conditions. The guarding of the machinery men-

tioned in the statute is a duty required of the master for the protection of his workmen, and he owes the specific duty to each person in his employ. To omit it is a misdemeanor subjecting him to a criminal prosecution.''

It is said by counsel for defendant that the cost of repairing or placing of guards over these pulleys would be but a trifle and that the deceased could easily have placed such guards, and that by his failure so to do he became liable for a penalty. We do not believe that a person in charge of the machinery, taking care of it, as the deceased was, would incur a penalty for failure to install machinery that he had not been directed by the master to place therein when the master was actively participating in and managing the business of the going concern. This duty primarily rested upon Becker. The theory that the plaintiff cannot recover because of his failure or neglect to place the guards upon the machinery must be based upon the principle that although he may have been an employee, as he certainly was, he was guilty of negligence and assumed the risk of working with the machinery without guards. But, if this were true, it would not excuse the defendant from doing what the law requires of him, and the penalty imposed upon the defendant is to withdraw from it the defense of contributory negligence and assumed risk. The Supreme Court of this State seems to construe this act the same as the Mining Act, for it says, in the case of *Streeter v. Western Wheeled Scraper Co., supra*: ''For many years we have held, in the construction of the Mining Act, that neither assumed risk nor contributory negligence is available as a defense to a suit for damages caused by a wilful violation of the provisions of that act. *Bartlett Coal & Mining Co. v. Roach,* 68 Ill. 174. * * * This law was passed to protect employees, and in view of the construction given to the Mining Act in regard to the assumption of risk, the General Assembly must have

supposed that the same construction would be given to this act in that regard.'' Waiving the question as to the effect that the neglect of the deceased to place guards upon these pulleys would have upon the right of action for his injury, and the limiting of the right of defense of the defendant, yet the evidence shows he was receiving wages and not only looking after the machinery but was performing work, and performed such work as required him to pass near these pulleys, and there was at least evidence tending to show that he was an employee, and the evidence was not of that character that would warrant a court in saying that as a matter of law he was such a superintendent as would deprive him of the benefits of the statute. We think the case should have been submitted to the jury and that the trial court erred in directing a verdict, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*